**Gary KOSTON, as the legal representative of his daughter, Jenna Koston, Respondent,**

v.

**SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Petitioner.**

No. 91–5135.

United States Court of Appeals, Federal Circuit.

Aug. 28, 1992.

---

States Claims Court, 23 Cl.Ct. 597 (1991), which affirmed the special master's denial of the Secretary's motion to amend his report conceding the existence of a vaccine-related residual seizure disorder for which no alternative cause was identified, and sustained an award of compensation under the National Childhood Vaccine Injury Act of 1986. We affirm.

## Background

From the undisputed facts before the Claims Court, it appears that Jenna Koston (Jenna) was born on December 31, 1983 by an uncomplicated delivery. Although she developed normally and experienced no adverse reaction to her first diphtheria-pertussis-tetanus (DPT) vaccination, at the age of three and one-half months, and approximately twelve hours after receiving her second DPT vaccination, Jenna experienced a seizure. During this almost forty minute seizure, Jenna ran a fever of 100.3 degrees, her arms twitched, her legs stiffened, and her eyes rolled upward. Since then, she has suffered repeated uncontrollable seizures, including one just one day after a diphtheria-tetanus vaccination.

On May 8, 1990, Gary Koston (Koston), as Jenna's legal representative, filed a petition for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1–300aa–34 (1988 & Supp. II 1990) ("the Vaccine Act" or "the Act"). He claimed that because the first manifestation or symptom of Jenna's condition occurred within three days of when the vaccine was administered, see 42 U.S.C. § 300aa–14(a)(I)(B) & (D), it was presumptively caused by the vaccine and compensation was due. He said that Jenna satisfied section 300aa–13(a) of the Act which is at issue here, and reads in its entirety:

(1) Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole—

(A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title, and

Helene M. Goldberg, Director, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued for petitioner. With her on the brief was Stuart M. Gerson, Asst. Atty. Gen.

Curtis R. Webb, of Webb, Pedersen & Webb, Twin Falls, Idaho, argued for respondent.

Before ARCHER, MAYER, and MICHEL, Circuit Judges.

MAYER, Circuit Judge.

The Secretary of Health and Human Services appeals the judgment of the United

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.

The special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.

(2) For purposes of paragraph (1), the term "factors unrelated to the administration of the vaccine"—

(A) does not include any idiopathic, unexplained, unknown, hypothetical, or undocumentable cause, factor, injury, illness, or condition, and

(B) may, as documented by the petitioner's evidence or other material in the record, include infection, toxins, trauma (including birth trauma and related anoxia), or metabolic disturbances which have no known relation to the vaccine involved, but which in the particular case are shown to have been the agent or agents principally responsible for causing the petitioner's illness, disability, injury, condition, or death.

Rule 4(b) of the Addendum to Appendix J of the Rules of the United States Claims Court requires the Secretary to submit a report in response to a petition for compensation that sets out his position on whether compensation should be granted. On August 6, 1990, the Secretary filed such a "Rule 4(b) report" in response to Koston's petition for relief. The report concluded that causation by factors unrelated to Jenna's DPT vaccination was not supported by a preponderance of the evidence. Therefore, the Secretary conceded causation but recommended further proceedings to determine the amount of compensation. To this end, the Secretary secured consent from Koston for Jenna to undergo an independent medical evaluation to accurately determine compensation. Dr. Doris Trauner of the University of California at San Diego performed the evaluation, and concluded that Jenna suffers from a variant of Rett Syndrome.

After receiving Dr. Trauner's report, the Secretary moved for leave to amend his Rule 4(b) report to withdraw the concession of causation. Specifically, the Secretary wanted to assert that Jenna's seizures were caused by Rett Syndrome and not by the DPT vaccination. The assigned special master denied leave to amend, and directed the Secretary to make no reference to Rett Syndrome and to remove all references to Rett Syndrome from Dr. Trauner's report. On March 29, 1991, the special master entered an award of compensation.

On April 29, 1991, the Secretary moved for Claims Court review of the special master's decision, arguing that the master abused her discretion in not granting leave to amend the Rule 4(b) report. Koston countered that the special master acted reasonably, but that even if she abused her discretion, because Rett Syndrome is an idiopathic illness, amendment would have been futile.

The Claims Court held that the special master did abuse her discretion in denying the motion to amend, but it nevertheless affirmed because amendment would have been futile. The court summarized the descriptions of Rett Syndrome contained in the medical journals and concluded that the "origins of Rett Syndrome have yet to be discovered," 23 Cl.Ct. at 604, and, that Rett Syndrome is possibly "idiopathic." *Id.* at 605. Given this, it held that compensation was not barred because the Act states that idiopathic conditions cannot defeat recovery, 42 U.S.C. § 300aa–13(a)(2)(A), and that unrelated factors must be identified as responsible for a condition; Rett Syndrome could not be responsible for Jenna's condition given that it has no known cause.

On appeal, the Secretary disagrees with the Claims Court's holding that amendment would have been futile, while agreeing with its view that denying the motion to amend was an abuse of discretion. Naturally, Koston agrees with the conclusion on futility, but disagrees that the special master abused her discretion. We affirm the judgment on the basis that amending the Rule 4(b) report would be futile. We therefore

do not consider the abuse of discretion argument.

## Discussion

Rett Syndrome was first described by Andrens Rett, a pediatrician from the University of Vienna. In 1966, he "reported 31 girls who had mental regression, abnormal neurologic examinations, curious, repetitive, hand-wringing, stereotypic movements, and other peculiar behavioral manifestations." Bengt A. Hagberg, *Rett Syndrome: Clinical Peculiarities, Diagnostic Approach, and Possible Cause,* 5 Pediatric Neurology 75 (1989) (Hagberg). But, it was not until the 1980s that the English-speaking medical world became interested in the syndrome. Apparently, Rett Syndrome manifests itself in roughly four stages: (I) 6 months to 1½ years: stagnation of development; (II) 1–2 years: rapid regression of acquired abilities and personality change; (III) 3–4 years: personality stabilization but regression of neuromotor functions; and (IV) school age or early adolescence: wheelchair dependency.

Little is known of Rett Syndrome's cause. It "is suspected but not established" as a genetic disease. *Id.* at 80. It has not been "established" as a genetic disease because its genetic basis "remains unsatisfactorily elucidated." *Id.* In fact, Dr. Hagberg wrote that the very nature of Rett Syndrome is still being debated: "At present, it is unknown whether [Rett Syndrome] is a homogenous disease or represents a heterogeneous group of conditions with an unusual expression and for unknown reasons has a predilection for females." *Id.* at 82. He describes the syndrome as being in a "stage of complete causal mystery." *Id.*

Drs. Trauner and Haas wrote, "Rett syndrome is a progressive, neurological disorder of unknown cause that has been described only in girls." Doris A. Trauner & Richard H. Haas, *Electroencephalographic Abnormalities in Rett Syndrome,* 3 Pediatric Neurology 331 (1987) (Trauner & Haas). They posit that a metabolic disorder may be responsible for Rett Syndrome, but admit that "a specific, causal, metabolic defect has not been identified. Further studies are needed to determine whether there is a primary metabolic defect responsible for the symptoms of Rett syndrome." *Id.* at 333. The Secretary acknowledges that Rett Syndrome has no known cause, but argues that it is present from birth and therefore must be a factor unrelated to the DPT vaccination.

■ Our task is purely one of statutory interpretation. Section 300aa–13(a)(1)(B) of the Vaccine Act bars compensation if there is "a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine." Accepting that Jenna exhibits the symptoms of Rett Syndrome, the question boils down to whether Rett Syndrome is a factor unrelated to the DPT vaccine. Section 300aa–13(a)(2)(A) defines unrelated factors as not including "any idiopathic, unexplained, unknown, hypothetical, or undocumentable cause, factor, injury, illness, or condition." Since the word "or" is used with both the adjectives (idiopathic, unexplained, unknown, *or* hypothetical) and the nouns (cause, factor, injury, illness, *or* condition), it is apparent that an unrelated factor is not an idiopathic illness, an unexplained illness, or an unknown cause. As Koston says, "The statute is plain enough. An 'idiopathic' condition, or a condition with an 'unknown cause', is not a 'factor unrelated to the administration of the vaccine.' "

■ The parties quibble over whether Rett Syndrome really fits in the category of an "idiopathic" condition. Meeting this requirement merely supplements the standing of Rett Syndrome as an unknown cause, but Koston is correct that the syndrome can be described as an "idiopathic" illness. He cites several dictionaries for the definition of "idiopathic" as a disease whose cause is unknown. Countering those citations, the Secretary cites the first definition in a dictionary ("peculiar to the individual"), but does not mention that the second definition is "arising spontaneously or from an obscure or unknown cause." Webster's Third New International Dictio-

 

nary 1123 (1976). The numbering of definitions is only a "lexical convenience" and does not "establish an enduring hierarchy of importance among" the definitions; both definitions are equally applicable. *Id.* at 179. So an idiopathic illness is an illness of unknown origin; Rett Syndrome meets the test.

Section 300aa–13(a)(2)(B) of the Act also does not prohibit recovery. It states that a factor unrelated to the vaccine may include "infection, toxins, trauma (including birth trauma and related anoxia), or metabolic disturbances which have no known relation to the vaccine involved." The medical community is currently attempting, so far unsuccessfully, to point to one of these as responsible for Rett Syndrome. For example, Dr. Hagberg asks, "Could [Rett Syndrome] primarily be an infectious process?". Hagberg at 82. And Drs. Trauner and Haas suggest that perhaps it is caused by a metabolic defect, but admit that none have yet been identified. Trauner & Haas at 333. We do not suggest that Rett Syndrome can never be an unrelated factor; someday the medical community may isolate a specific cause for it. Then we will have a different case.

By the plain words of the statute, we have an unknown cause and seizures occurring within three days, the period the Vaccine Injury Table sets for recovery. 42 U.S.C. § 300aa–14. That is the end of our inquiry, although we are also satisfied that this interpretation is consonant with the purpose of the statutory scheme which envisions that awards be made "quickly, easily, and with certainty and generosity," H.R.Rep. No. 908, 99th Cong., 2d Sess. 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6287, 6344, even if this results in "compensation to some children whose illness is not, in fact, vaccine-related." *Id.* at 18, 1986 U.S.C.C.A.N. at 6359. But even if we were to credit the Secretary's suggestion that Jenna's receipt of an unwarranted award would be an absurd result, we could only respond that we are interpreting the statute as Congress wrote it. Avoidance of absurdity, if such it be, is its responsibility, not ours. *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978).

*Conclusion*

Accordingly, the judgment of the Claims Court is affirmed.\*

*AFFIRMED.*

---

\* The Secretary says he should be allowed to go back to the trial court and have a chance to supplement the record with additional evidence on the cause and nature of Rett Syndrome because he was caught by surprise by the ruling that amendment would be futile. However, we are told that issue was raised at the argument on the Secretary's motion to amend before the master; indeed, her order on that motion specifically reflects this:

> Further, petitioner maintains that allowing respondent to withdraw its concession would be futile because Jenna does not have any of the characteristics which are unique to Rett syndrome. Moreover, citing Section 13(a) of the Vaccine Act, petitioner also argues that a successful assertion of an alternative cause would require that the cause of the disorder be known. Such is not the case here, asserts petitioner.

Order Denying Respondent's Motion to Amend Report, No. 90–395, p. 7 (Cl.Ct.Spec.Mstr. Dec. 3, 1990). The same can be said of the Claims Court's disposition; apparently the Secretary was not certain such evidence even existed. 23 Cl.Ct. at 605 n. 3.