**Stacy CARSON and Amy Carson, as legal guardian for Kit Carson, Petitioners,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 02–873V.**

United States Court of Federal Claims.

Jan. 7, 2010.

David P. Matthews, Matthews & Associates, Houston, TX, for Petitioners.

Heather L. Pearlman, U.S. Department of Justice, Vaccine/Torts Branch, Civil Division, Washington, D.C., for Respondent.

## ORDER AND OPINION

WILLIAMS, Judge.

This matter comes before the Court on Stacy and Amy Carson's ("Petitioners") motion for review of the Chief Special Master's August 26, 2009 decision dismissing the Carsons' petition for vaccine compensation as untimely filed. *Carson v. Sec'y of Health & Human Serv,* No. 02–873V, 2009 WL 2957312 (Fed.Cl.Spec.Mstr. Aug. 26, 2009) ("*Decision*"). For the reasons set forth below, the Court upholds the findings of fact and conclusions of law articulated by the Chief Special Master and sustains the dismissal.

### Background[1]

Kit Carson was born on May 22, 1996, and received numerous vaccinations between his birth and June 4, 1997. *Decision* at 3. Kit's pediatricians noted that he was "[b]ehind in speech" at his 18–month check-up, and "speech delay[ed]" at his 24–month check-up. *Id.* On May 25, 1999, Dr. Page, Kit's pediatrician, noted Kit's "severe language delay," and referred him to the Developmental Evaluation Center ("DEC") in Asheville, NC. *Id.* On September 13, 1999, Kit was evaluated by a psychologist for placement in his school district, at which time the psychologist again noted Kit's language delays. *Id.* Kit was

diagnosed with autism spectrum disorder on April 26, 2001, by clinical supervisor Anne McGuire at the University of North Carolina TEACCH Center in Asheville, NC. *Id.*

On July 22, 2002, Petitioners, on behalf of their son Kit, filed a Petition for Vaccine Compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300aa–1 *et seq.,* ("Vaccine Act" or "Act"). *Id.* at 1–2. On September 10, 2002, in response to the Office of Special Masters' July 2002 General Order # 1, Petitioners filed a notice to defer proceedings. *Id.* at 2. Proceedings began again on February 15, 2008, when the Special Master ordered Petitioners to produce Kit Carson's medical records. *Id.* Petitioners produced the requested records between April 3 and December 15, 2008. *Id.*

On May 14, 2008, Respondent moved to dismiss the petition under Rule 21(b) of the Vaccine Rules of the United States Court of Federal Claims on the grounds that the Carsons had filed their petition more than 36 months "after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." *Decision* at 3; 42 U.S.C. § 300aa–16(a)(2). Respondent argued that the first symptom or manifestation of onset for purposes of Section 16(a)(2) occurred in May of 1999 when Kit "was referred to the DEC by his pediatrician for an evaluation of speech/language and gross motor delays." *Decision* at 6 (quoting Resp.'s Mot. to Dismiss at 3).

In response to Respondent's motion, Petitioners filed additional medical records on November 7, 2008, and December 15, 2008, as well as an expert medical report on January 13, 2009, which was supplemented on February 17, 2009. *Decision* at 2. In the first expert medical report, Dr. Elizabeth Mumper rendered an opinion regarding the date of diagnosis of autism, which she believed occurred on April 23, 2001. *Id.* at 5. On February 9, 2009, the Chief Special Master issued a scheduling order, in which he

---

1. This background is derived from the Chief Special Master's August 26, 2009 decision, Petitioners' memorandum in support of their motion for review, and Respondent's memorandum in response thereto. The facts are not in dispute, and a more detailed description of Kit's history can be found in the Chief Special Master's *Decision*.

ordered Dr. Mumper to address the following two questions:

1. Utilizing all of the current medical information for Kit, retrospectively, or looking back, what was the first symptom of Kit's autism disorder?

2. Again, utilizing all of the current medical information, looking back or looking retrospectively, was Kit's noted speech/language and gross motor delay in May of 1999 the first symptom of his autism disorder?

*Id.* at 2 n. 3. On February 17, 2009, Dr. Mumper submitted an addendum to her January 13, 2009 report, in which she addressed the question she characterized as: "What is the first symptom, in retrospect, that would have suggested the diagnosis of autism?" Pet. Ex. 32 at 1. In response, Dr. Mumper concluded that, in her opinion, "the first symptoms presented during the IEP assessments conducted in the fall of 1999." *Id.* at 2.

On June 2, 2009, the Chief Special Master conducted a hearing and elicited testimony from Dr. Mumper. *Decision* at 2. On August 26, 2009, the Chief Special Master granted Respondent's motion to dismiss. Relying on the testimony of Petitioners' own expert, the Chief Special Master held the "severe language delay" observed as early as May 25, 1999, was the first symptom or manifestation of Kit Carson's autism, which was more than 36 months prior to filing the petition on July 22, 2002. *Id.* at 9. Petitioners filed the instant motion for review on September 16, 2009.

The Chief Special Master applied Section 16(a)(2) of the Act and the objective standard set forth by the Federal Circuit in *Markovich v. Sec'y of Health & Human Serv.*, 477 F.3d 1353 (Fed.Cir.2007), to determine whether the petition was timely filed. *Decision* at 4–9. Section 16(a)(2) of the Act provides that "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42 U.S.C. § 300aa–16(a)(2). In *Markovich*, the Federal Circuit held that the "first symptom or

manifestation of onset" of a vaccine injury, for the purposes of Section 16(a)(2) of the Act, "is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large." *Markovich*, 477 F.3d at 1360. The Federal Circuit acknowledged that the limitations period may begin before the petitioners "would be able to identify, with reasonable certainty, the nature of the injury." *Id.* at 1358 (quoting *Brice v. Sec'y of Health & Human Serv.*, 36 Fed.Cl. 474, 477 (1996)). The Chief Special Master also emphasized the Federal Circuit's precedent that "subtle symptoms," which " 'may be indicative of a variety of conditions or ailments' " and may only be recognizable as a symptom " 'with the benefit of hindsight,' " can trigger the Vaccine Act's statute of limitations. *Decision* at 5 (quoting *Markovich*, 477 F.3d at 1357–58).

In applying this standard to the Carsons' petition, the Chief Special Master relied upon the written reports and oral testimony of Petitioners' medical expert, Dr. Mumper, to determine "the first event objectively recognizable as a sign of a vaccine injury." *Decision* at 6–9 (quoting *Markovich*, 477 F.3d at 1360). Relevant to the Chief Special Master's decision was Dr. Mumper's testimony that: (i) Kit Carson was "exhibiting speech delay" as early in May of 1999; (ii) speech delay is one symptom of autism; and (iii) difficulties with speech was "one of the ways [Kit Carson's autism] manifested itself." *Decision* at 7 (citing Dr. Mumper's testimony). Based on this testimony, the Chief Special Master concluded "that the first symptoms of Kit's autism spectrum disorder are recorded in May of 1999.... Thus, the petition in this matter needed to be filed in May of 2002 to be timely filed in accordance with § 16(a)(2)." *Decision* at 7.

### Discussion

■ Upon receipt of a timely filed motion for review, this Court will review a special master's decision. The Court may sustain the special master's decision, "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law," or

"remand the petition to the special master for further action in accordance with the court's direction." 42 U.S.C. § 300aa-12(e)(2). This Court applies the arbitrary and capricious standard to findings of fact, the abuse of discretion standard to discretionary rulings, and determines whether a special master's conclusions of law are in accordance with law. *Munn v. Sec'y of Health & Human Serv.*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992); *Pafford v. Sec'y of Health & Human Serv.*, 451 F.3d 1352, 1355 (Fed. Cir.2006); *Markovich*, 477 F.3d at 1355–56.

In applying this statutory provision, the Federal Circuit has held:

> In general, reversible error is extremely difficult to demonstrate if the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision. . . . [I]t is not … the role of [the reviewing] court to reweigh the factual evidence, or to assess whether the special master correctly evaluated the evidence. And of course [the reviewing court does] not examine the probative value of the evidence or the credibility of the witnesses. These are all matters within the purview of the fact finder.

*Lampe v. Sec'y of Health & Human Serv.*, 219 F.3d 1357, 1360 (Fed.Cir.2000) (internal quotations omitted); *see Rotoli v. Sec'y of Health & Human Serv.*, 89 Fed.Cl. 71, 77 (2009). With regard to findings of fact, "[t]he arbitrary and capricious standard of review is difficult for an appellant to satisfy with respect to any issue, but particularly with respect to an issue that turns on the weighing of evidence by the trier of fact." *Lampe*, 219 F.3d at 1360. The Court, however, affords no deference to the special master's conclusions of law, including statutory interpretations of the Vaccine Act. *Avera v. Sec'y of Health & Human Serv.*, 515 F.3d 1343, 1347 (Fed.Cir.2008).

█ Petitioners assert that the Chief Special Master's decision to dismiss the Petition as untimely filed was not in accordance with law. Pets.' Mem. in Supp. of Mot. for Rev. at 6 ("Pets.' Memo"). Petitioners dispute the Chief Special Master's finding that the speech delay observed by Kit Carson's treat-ing physician in May of 1999 "was more likely than not, the first symptom or manifestation of [Kit's] autism spectrum disorder." *Decision* at 6–7. According to Petitioners, "[s]peech delay is too vague and common of an occurrence to be considered the first objectively recognizable symptom of the vaccine injury." Pets.' Memo at 12. Petitioners assert that approximately 15 percent of children between 24 and 29 months of age have "language delay." Pets.' Memo at 9 (citing Buschmann, Jooss, et al., *Children with Developmental Language Delay at 24 Months of Age*, 50 J. Developmental Medicine & Child Neurology 223 (2008)). Petitioners argue that, because of the symptom's prevalence, none of Kit's doctors suspected that his speech delay was a symptom of autism. Pets.' Memo at 9. As such, according to Petitioners, Kit's speech delay, which was noted at least as early as May of 1999, cannot be considered the first objectively recognizable symptom of autism recognized by the medical profession at large. *Id.*

Petitioners also contend that *Markovich* is distinguishable from this case, and that this Court's earlier holding in *Setnes v. United States*, 57 Fed.Cl. 175 (2003), should inform the Court's application of Vaccine Act's limitations period to this case. Pets.' Memo at 10. According to Petitioners, the symptoms observed in *Markovich*—eye-blinking episodes and seizures—were more "conducive to the first symptom analysis" articulated by the Federal Circuit in *Markovich*. *Id.* Because this case involves the more "subtle" symptoms associated with autism, Petitioners assert that *Markovich* "does not disturb [the Court of Federal Claims'] holding in *Setnes* that autism is a complex disorder that develops 'insidiously over time.'" *Id.* (quoting *Setnes*, 57 Fed.Cl. at 181). As such, Petitioners conclude that "a subtle symptom that would be recognizable to the medical profession at large, but not to the parent, would not be sufficient to trigger the running of the statute." *Id.*

This Court disagrees with Petitioners' broad reading of *Setnes*. While the *Setnes* Court did conclude that "the beginning stage of autism cannot be reduced to a single, identifiable symptom," this conclusion was

based upon a medical opinion contained in an affidavit, and was not a legal "holding" of the Court. 57 Fed.Cl. at 179. Indeed, the expert in *Setnes* further opined that "many of the initial 'symptoms' [of autism] are subtle and can easily be confused with typical child behavior." *Id.* The *Markovich* Court, while recognizing that symptoms can be subtle, nonetheless applied the clear language of the Vaccine Act, as interpreted by the Supreme Court in *Whitecotton,* to hold that "the proper focus is on the first evidence of injury, emphasizing that any observable 'symptom or manifestation' may be the first evidence of injury." *Markovich,* 477 F.3d at 1359 (quoting *Shalala v. Whitecotton,* 514 U.S. 268, 274, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995)) (emphasis in original).

As such, Petitioners' conclusion that the *Setnes'* analytical framework survives *Markovich* is in error. Indeed, the *Markovich* Court expressly rejected the argument Petitioners make premised on *Setnes*—that a subtle symptom, recognizable to the medical profession, but not to the parents, could not trigger the statute of limitations. The Court in *Markovich,* interpreting the Supreme Court's ruling *Whitecotton* stated: "The Supreme Court, *unlike the Court of Federal Claims in Setnes,* did not require that a petitioner appreciate the significance of [the first] evidence [of injury]." 477 F.3d at 1359 (emphasis added). Thus, *Markovich* sounded the death knell for *Setnes'* suggestion that a petitioner must recognize the first symptom as evidence of autism in order for the statute of limitations to begin running. Petitioners' effort to rely on *Setnes* in the wake of *Markovich* must fail.

In *Markovich,* the Federal Circuit identified the test in Section 16(a)(2) as a disjunctive one, in which either the "first symptom" or "manifestation of onset" could trigger the statute of limitations. *Markovich,* 477 F.3d at 1357. The Federal Circuit explained that a symptom could be "indicative of a variety of conditions or ailments, and it may be difficult for lay persons to appreciate the medical significance of a symptom with regard to a particular injury." *Id.* The limitations period may begin "even though an exact diagnosis may be impossible until some future date when more symptoms or medical data are forthcoming." *Cloer v. Sec'y of Health & Human Serv.,* 85 Fed.Cl. 141, 149 (2008), *appeal docketed,* No. 09–5052 (Fed. Cir. Mar. 9, 2009) (citing *Markovich,* 477 F.3d at 1358–59.) Under *Markovich,* the analysis turns on whether the observed behavior (i.e., the symptom) is, in fact, one that is objectively recognizable as a symptom of a vaccine injury by the medical profession at large, and, if so, when that symptom was first observed. *See Bono v. Sec'y of Health & Human Serv.,* 87 Fed.Cl. 98, 102–03 (2009) ("*Markovich* supports [the] position that a symptom or manifestation need not be accepted as an injury specifically linked to vaccines; it only needs to be identifiable by the general medical community as a symptom or manifestation of an injury."). In understanding this approach, the Chief Special Master properly characterized the inquiry as whether the medical profession at large, with the benefit of hindsight, would objectively recognize Kit's "severe" speech delay as a symptom of autism.

In making this determination, the Chief Special Master relied upon the expert reports and testimony of Petitioners' medical expert, Dr. Mumper. Dr. Mumper confirmed that speech delay "can be" one of the symptoms of autism, and, indeed, was a symptom of Kit's autism. Dr. Mumper further confirmed that "severe" speech delay was first observed in May of 1999. *Decision* at 7 (citing Dr. Mumper's testimony).[2] Based on the full record, especially Dr. Mumper's testimony, the Court finds that the Chief Special Master's finding "that the first symptoms of Kit's autism spectrum disorder are recorded in May of 1999" was not arbi-

**2.** In this regard, the Chief Special Master emphasized the following exchange he had with Dr. Mumper at the June 2, 2009 hearing:
Q: [I]t's a fair read of [Kit's] records that—that looking backwards that the expressive speech that was first …—that we see first indicated back in May of '99 … that's all part all part of the same problem that's ultimately part of Kit's diagnosis or what you're saying today is on the autism spectrum disorder?
A: Yes, those symptoms are all part of that constellation ultimately.
*Decision* at 7 (quoting June 2, 2009 Hr'g Tr. 29).

trary or capricious and was fully supported by the evidence.[3]

### Conclusion

The Chief Special Master properly dismissed the petition as untimely, and the Decision by the Chief Special Master is sustained.

---

**3.** The Chief Special Master properly developed the record by eliciting testimony from Petitioners' expert, Dr. Mumper—in addition to her reports—to gain a fuller understanding of her opinion.