# United States Court of Appeals for the Federal Circuit

———————————

**STACY CARSON AND AMY CARSON,**
**as legal guardians for KIT CARSON,**
*Petitioners-Appellants,*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee.*

———————————

2010-5089

———————————

Appeal from the United States Court of Federal Claims in No. 02-VV-873, Judge Mary Ellen Coster Williams.

———————————

Decided: August 28, 2013

———————————

DAVID P. MATTHEWS, Matthews & Associates, of Houston, Texas, for petitioners-appellants.

HEATHER L. PEARLMAN, Senior Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, RUPA BHATTACHARYYA,

Director, VINCENT J. MATANOSKI, Deputy Director, and
CATHARINE E. REEVES, Assistant Director.

---

Before NEWMAN, CLEVENGER, and WALLACH, *Circuit
Judges.*

Opinion for the court filed by *Circuit Judge* WALLACH.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

WALLACH, *Circuit Judge.*

Parents Amy and Stacy Carson ("Petitioners") filed a
petition for compensation on behalf of their son, Kit
Carson, under the National Childhood Vaccine Injury Act,
42 U.S.C. §§ 300aa–1 to–34 (2006) ("Vaccine Act"). The
Chief Special Master dismissed the petition as untimely
filed. The United States Court of Federal Claims affirmed
and dismissed the Petitioners' petition for review. *See
Carson v. Sec'y of Health & Human Servs.*, 97 Fed. Cl.
620, 621 (2010). We affirm.

## BACKGROUND

Kit Carson was born on May 22, 1996, and received
numerous vaccinations between his birth and June 4,
1997.[1] Kit's pediatricians noted that he was "'[b]ehind in
speech'" at his 18-month check-up, and "'speech de-
lay[ed]'" at his 24-month check-up. *Carson*, 97 Fed. Cl. at
621 (quoting *Carson v. Sec'y of Health & Human Servs.*,

---

[1]    This background is drawn from the Court of Fed-
eral Claims's opinion. A more detailed description of the
Petitioners' history can be found in the Court of Federal
Claims's opinion and in the Special Master's Decision. *See
Carson*, 97 Fed. Cl. at 620; *Carson v. Sec'y of Health &
Human Servs.* No. 02-873V, 2009 U.S. Claims LEXIS 449
(Fed. Cl. Spec. Mstr. Aug. 26, 2009) ("Special Master's
Decision").

No. 02-873V, 2009 U.S. Claims LEXIS 449, at *4 (Fed. Cl. Spec. Mstr. Aug. 26, 2009) ("Special Master's Decision")). On May 25, 1999, at Kit's three-year check-up, Dr. Page, Kit's pediatrician, noted Kit's "severe language delay," and referred him to the Developmental Evaluation Center in Asheville, North Carolina. Special Master's Decision at *5. On September 13, 1999, Kit was evaluated by a psychologist for placement in his school district, at which time the psychologist again noted Kit's language delays ("IEP evaluations"). Kit was diagnosed with autism spectrum disorder on April 26, 2001. Petitioners, on behalf of their son, filed a petition for compensation under the Vaccine Act on July 22, 2002.

After a deferral of proceedings, Respondent moved to dismiss the petition under Rule 21(b) of the Vaccine Rules of the United States Court of Federal Claims on the ground that Petitioners filed their petition more than 36 months "after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." *See* 42 U.S.C. § 300aa–16(a)(2). The Chief Special Master relied upon the written reports and oral testimony of Petitioners' medical expert, Dr. Mumper, to determine "the first event objectively recognizable as a sign of a vaccine injury." Special Master's Decision at *7. Relevant to the Chief Special Master's decision was Dr. Mumper's testimony that: (i) Kit Carson was "exhibiting speech delay" in May of 1999; (ii) speech delay is one symptom of autism; and (iii) difficulty with speech was "one of the ways [Kit Carson's autism] manifested itself." *Id.* at *15. Based on this testimony, the Chief Special Master concluded "that the first symptoms of Kit's autism spectrum disorder are recorded in May of 1999 . . . . Thus, the petition in this matter needed to be filed in May of 2002 to be timely filed in accordance with § 16(a)(2)." *Id.* at *16–17.

Petitioners appealed the Chief Special Master's decision to the Court of Federal Claims. The Court of Federal

Claims found that the Chief Special Master properly dismissed the petition as untimely and sustained the decision. *Carson*, 97 Fed. Cl. at 625. Petitioners then filed the present appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) and 42 U.S.C. § 300aa–12(f).

## DISCUSSION

The Vaccine Act established a program to increase the safety and availability of vaccines, and through the Vaccine Injury Compensation Program claimants may get compensation for vaccine-related injuries or death. *See* 42 U.S.C. §§ 300aa–1, 300aa–10(a). The program limits the period during which a petitioner may file for compensation:

> [(a)](2) . . . if a vaccine-related injury occurred as a result of the administration of [a vaccine set forth in the Vaccine Injury Table that was administered after October 1, 1988], no petition may be filed for compensation under the Program for such injury *after the expiration of 36 months after the date of occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury . . . .*

42 U.S.C. § 300aa–16(a)(2) (emphasis added).[2]

---

[2]    The dissent states that "[a]t a minimum, equitable tolling should be applied to this petition." Dissenting Op. at 10. Although this court held that equitable tolling is available under the Vaccine Act in certain circumstances, *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1344–45 (Fed. Cir. 2011) (en banc), "we find no basis in equity for doing so" in this case, *see id.* at 1344 (holding the same). The court in *Cloer* held that the unfairness of barring a claimant from asserting a diligently pursued Vaccine Act claim was not, by itself, "the sort of circumstance that might merit equitable tolling." *Id.* Rather,

"We review an appeal from the Court of Federal Claims in a Vaccine Act case de novo, applying the same standard of review as the Court of Federal Claims applied to its review of the special master's decision." *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010). We give no deference to the Court of Federal Claims's or Special Master's determinations of law, but uphold the Special Master's findings of fact unless they are arbitrary or capricious. *Id.*

In *Markovich*, this court established a standard to determine when the "first symptom" occurred for purposes of the Vaccine Program's statute of limitations. *See Markovich v. Sec'y of Health & Human Servs.*, 477 F.3d 1353, 1360 (Fed. Cir. 2007). The court rejected a subjective standard that focused on the parent's view as to when the first symptom presented and instead adopted "an objective standard that focuses on the recognized standards of the medical profession at large . . . ." *Id.* at 1360. The court held that "'the first symptom or manifestation of onset,' for the purposes of § 300aa–16(a)(2) is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large." *Id.*

Petitioners do not dispute that Kit demonstrated speech delay more than 36 months before they filed their petition. Additionally, Petitioners' expert medical witness concurred that Kit's speech delay was the first symptom of his autism. At trial, Respondent's counsel questioned Dr. Mumper on the relationship between Kit's speech delay and his ultimate autism diagnosis:

---

"'some extraordinary circumstance'" must also be present. *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Petitioners have not argued that any such circumstance exists in this case.

Q: Would you . . . agree with me . . . that prior to July of 1999, Kit Carson was exhibiting speech delay?

A: He was exhibiting speech delay, that's correct.

Q: Okay. And I believe I heard you say that you would agree that the speech delay can be a symptom of autism; is that correct?

A: It can be one symptom of autism, that's true.

Q: And would you agree that this child, Kit Carson, one of the ways his autism manifested itself is in his difficulties with speech?

A: Correct.

Special Master's Decision at *15–16. The Chief Special Master observed that "Dr. Mumper essentially conceded that Kit's language delay, which was noted in May of 1999 by his treating pediatrician, was more likely than not the first symptom or manifestation of his autism spectrum disorder." *Id.* at *15.

On appeal, Petitioners argue the medical community at large would not recognize Kit Carson's speech delay as evidence of a vaccine injury. Pet's Br. 11. Petitioners posit that "[s]peech delay is too vague and common of an occurrence to be considered the first objectively recognizable symptom of the vaccine injury." *Id.* at 18. According to Petitioners, "[t]he first objectively recognizable symptoms of social impairments and lack of interest in toys were observed during the IEP evaluations in September 1999; the petition was filed in July 2002, well within the 36 month statute of limitations." *Id.* at 19.

However, the Chief Special Master made a factual finding to the contrary, stating: "[T]he first objectively recognizable symptom or manifestation of onset of Kit's autism was exhibited no later than May 25, 1999 when Kit was noted by his pediatrician Dr. Page to have 'severe

language delay'. . . ."[3] Special Master's Decision at *19–20. This finding was "based on the medical records and Dr. Mumper's testimony," *id.* at *19, and was not arbitrary and capricious.

Petitioners effectively argue that speech delay cannot be a "first symptom" because it is an insufficient basis for a *diagnosis* of autism. *See, e.g.* Pet's Br. 17 (arguing speech delay "is too broad and common of a complaint for a physician to *know* that this particular child had autism") (emphasis added). However, as explained at length by this court in the past, it is the first symptom or manifestation of an alleged vaccine injury, not first date when diagnosis would be possible, that triggers the statute of limitations under § 300aa–16(a)(2). In *Markovich*, this court concluded that "[b]ecause Congress is presumed to have intended disjunctive meaning by using the disjunctive word 'or,' we interpret the words 'first symptom' and 'manifestation of onset' as referring to two different forms of evidence of injury." *Markovich*, 477 F.3d at 1357. This court explained that "[a] symptom may be indicative of a variety of conditions or ailments, and it may be difficult for lay persons to appreciate the medical significance of a symptom with regard to a particular injury," whereas "a

---

[3] The dissent appears to disagree with the Chief Special Master's finding, stating instead that the medical community would *not* recognize language delay alone as indicative of autism. *See* Dissenting Op. at 6–7. It relies on Dr. Mumper's testimony and the Diagnostic and Statistical Manual of Mental Disorders, both of which show that a *diagnosis* of autism requires more than a speech delay. The date of possible diagnosis, however, is not the controlling inquiry. Rather, as stated above, the pertinent question is whether the medical community would recognize speech delay as a symptom of autism. The Chief Special Master found that it would. *See* Special Master's Decision at *19–20.

manifestation of onset is more self-evident of an injury and may include significant symptoms that clearly evidence an injury." *Id.* We additionally noted that the first symptom or manifestation of onset might include subtle symptoms that a petitioner would recognize "only with the benefit of hindsight, after a doctor makes a definitive diagnosis of injury." *Id.* at 1358 (internal quotation marks and citation omitted).[4]

Petitioners argue that "[t]he issue in the case at bar is not the Petitioners' appreciation of the significance but that multiple medical providers did not appreciate the significance." Pet. Br. 17. There is no question that speech delay can be indicative of several conditions, and in some circumstances may even be normal. In the instant case, however, it was not arbitrary and capricious for the Chief Special Master to find that the severe speech delay observed on May 25, 1999, was the first objectively recognizable symptom of autism, the alleged vaccine injury. That Kit's doctors did not diagnose Kit with

---

[4] To the extent the Court of Federal Claims affirmed on the basis that a "first symptom" need only be recognizable by the medical community "with the benefit of hindsight," *Carson*, 97 Fed. Cl. at 625, this court declines to decide whether hindsight is adequate, or instead whether the "first symptom" must be recognizable by the medical community as indicative of the alleged vaccine injury at the time the symptom occurs. *See Markovich*, 477 F.3d at 1360 (stating the "first symptom" must be "recognizable" by the medical profession at large). It is, however, clear that there is no need for the symptom to be contemporaneously *recognized* by the medical community. *See Wilkerson v. Sec'y of Health & Human Servs.*, 593 F.3d 1343, 1345–46 (Fed. Cir. 2010) (rejecting Petitioner's argument that the statute of limitations was not triggered by a "first symptom" unless the medical community in fact recognized it as such at the time it occurred).

autism until some time later does not alter the fact that this symptom was evident by May 1999.[5]

CONCLUSION

The Chief Special Master's dismissal of this claim and the Court of Federal Claims's affirmance were in accord with law, were neither arbitrary nor capricious, nor was there any abuse of discretion. The Court of Federal Claims's decision is therefore

**AFFIRMED**

---

[5] In *Markovich*, the first symptom of petitioner's seizure disorder was a first episode of repeated eye blinking; this court stated that "the testimony of Dr. Corbier and others confirms that Ashlyn's eye blinking episode on July 10, 2000 was objectively recognizable by the medical profession at large as constituting the first evidence of vaccine injury onset." *Markovich,* 477 F.3d at 1360. This court later clarified, "[w]e do not read *Markovich* as requiring in each case a showing of the date on which the medical profession at large had such a recognition [of the symptom]," explaining that "[t]he fact that such recognition may have occurred some time after the symptoms first occurred does not undermine the medical judgment upon which the decision in this case was based." *Wilkerson,* 593 F.3d at 1345–46.

# United States Court of Appeals for the Federal Circuit

---

**STACY CARSON AND AMY CARSON,**
**as legal guardians for KIT CARSON,**
*Petitioners-Appellants,*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee.*

---

2010-5089

---

Appeal from the United States Court of Federal Claims in No. 02-VV-0873, Judge Mary Ellen Coster Williams.

---

Decided: August 28, 2013

---

NEWMAN, *Circuit Judge,* dissenting.

The court today holds that the statute of limitations starts to run before the fact or even the likelihood of vaccine-related injury is recognizable by medical professionals. Thus the court holds that behavior that the medical community did not associate with a vaccine-related injury and "may even be normal" can qualify as a "first symptom" of vaccine-related injury for purposes of commencement of the three-year limitations period of the

Vaccine Act.  The result is that in the case of Kit Carson the limitations period ended less than a year after the evolving combination of symptoms was recognized as a possible vaccine injury.  The ostensibly tardy filing of Kit Carson's claim occurred only two months after the end of the retrospectively-initiated three-year period.  At a minimum, even on the court's theory that the limitations period started before any injury was recognized, equitable tolling should be available in such circumstances.  Fairness and common sense demand no less.

It cannot have been the legislative intent that Vaccine Act compensation is available on the first appearance of a "symptom" that "may even be normal."  Neither can it have been the legislative intent that the period of limitations starts to accrue during a period of normal behavior or unresolved symptoms of unknown significance.  Yet my colleagues so hold, on their retrospective finding that Kit Carson's symptom of delay in speech indicated autism, although that diagnosis was rejected by an impressive number of professionals.

It cannot reasonably be argued that Kit could have claimed vaccine injury compensation during that initial period of delayed speech, which was viewed at the time as reasonably-normal development.[1]  A limitations period cannot start to run before the existence of the cause of action that it limits.

---

[1]    Fifteen percent of children between the ages of 24-29 months experience language delay.  Buschmann, Jooss, et al, *Children with Developmental Language Delay at 24 Months of Age,* 50 Journal of Developmental Medicine & Child Neurology, 223 (2008).

## I

The facts are not in dispute. By the age of twelve months, Kit had received a schedule of vaccines that included Hepatitis B, DTP-Hib, OPV, H-Flu B, DTaP, MMR and Varicella vaccines. Kit's developmental milestones were within normal parameters for his four, six, nine and twelve-month pediatric well-child visits. On December 1, 1997, at the eighteen-month visit, the pediatrician recorded that Kit was "[b]ehind in speech." At the two-year visit on June 16, 1998 the pediatrician recorded that Kit was "speech delayed." At Kit's three-year visit, on May 25, 1999, the pediatrician observed Kit to have "Severe language delay – Expressive."

In September 1999 Kit was evaluated as part of an Individualized Education Program, and the psychologist observed that Kit "interacts with toys and uses imaginative play with rolling toys, but does not attend to me or interact with me unless it is to get him something he wants." The psychologist wrote that Kit "appears to have well developed fine motor manipulative skills" but that "language delays are considerable and pervasive."

On May 3, 2000 Kit was examined again by his pediatrician, who concluded: "Expressive language delay, no other dx appropriate." On October 30, 2000 Kit underwent a battery of neurological tests including an EEG, MRI, and brainstem auditory test. All test results were within normal parameters. The examining neurologist wrote: "He is alert, very interactive and generally pleasant, and spent much of the examination playing with several plastic toys." The neurologist concluded that Kit was "best classified at this time as pervasive developmental delay affecting primarily speech and language. He does not appear to meet criteria for autism." The neurologist also stated that Kit "has had extensive laboratory evaluation and little more is warranted at this time." On December 11, 2000 Kit underwent genetic testing, which

concluded that "chromosome morphology appeared normal."

From June 21 to July 21, 2000 Kit underwent a series of evaluations at the University of North Carolina. The evaluations included a behavioral rating scale designed to identify children with autism, the Childhood Autism Rating Scale, and a developmental test designed specifically for autistic and communication handicapped children, the Psychoeducational Profile Revised. The clinic determined that the tests were inconclusive, but indicated a need for further assessment as "Kit demonstrated a number of behaviors often observed in children with autism spectrum disorder." On April 23, 2001, the Clinical Supervisor conducted a follow-up evaluation and concluded, on April 26, 2001, that Kit "demonstrates a pattern of behavior consistent with a diagnosis of mild autism." This Vaccine Act petition was filed on July 22, 2002.

## II

The court rules that the three-year period of limitations started to run by May 25, 1999, before possible autism was mentioned by any medical professional—and therefore that the petition became time-barred after May 25, 2002.

The first diagnosis of Kit Carson's autism was in April 2001. Thus the court interprets the statute that provides a three year limitation period for filing a claim for vaccine injury, to include the period during which Kit's autism was not recognized or was rejected by a battery of medical professionals.

My colleagues cite irrelevant precedent that the start of the limitations period is unaffected by diagnostic delay by "lay persons" who do not appreciate a symptom's medical significance. Here Kit received extensive and continuing evaluations by specialists, yet the likelihood of

autism was not diagnosed by any medical or pediatric professional. Kit's early speech delay was not recognized as a manifestation of autism until after the occurrence of additional symptoms.

The court holds that the relation of the date of a first undiagnosed symptom to the date at which that symptom could be recognized as a sign of autism is irrelevant to the commencement of the limitations period, citing *Markovich v. Sec'y of Health & Human Servs.*, 477 F.3d 1353 (Fed. Cir. 2007). In *Markovich* this court stated: "A symptom may be indicative of a variety of conditions or ailments, and it may be difficult for lay persons to appreciate the medical significance of a symptom with regard to a particular injury." *Id.* at 1357. The court stated that "a petitioner typically will recognize that a particular symptom constitutes the first symptom or manifestation of the onset of a certain injury only with the benefit of hindsight, after a doctor makes a definitive diagnosis of the injury." *Id.* at 1358.

The court held in *Markovich* that the failure of lay persons (such as parents) to recognize a symptom of vaccine injury does not avoid commencement of the limitations period when the symptom is recognizable by professionals as vaccine injury. The court held that "'the first symptom or manifestation of onset,' for the purposes of § 300aa–16(a)(2), is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large." *Id.* at 1360.

In *Markovich* the infant's eye-blinking seizures that occurred on the day the vaccines were administered were "objectively recognizable by the medical profession at large" as constituting evidence of vaccine injury. *Markovich* did not hold, as does the panel majority herein, that when medical professionals did not recognize vaccine-related symptoms and rejected the diagnosis of the affliction, the parents are nonetheless charged with knowledge

of existence of the affliction for statute of limitations purposes.

In *Cloer v. Sec'y of Health and Human Services,* 654 F.3d 1322 (Fed. Cir. 2011) (en banc) this court held that "the statute's limitations period begins to run on the calendar date of the occurrence of the first medically recognized symptom or manifestation of onset of the injury claimed by the petitioner." *Id.* at 1324-25. The court stated that the first symptom or manifestation for limitations purposes must be of a "vaccine-related injury recognized as such by the medical profession at large." *Id.* Such medical recognition did not exist with Kit Carson's early manifestation of speech delay.

The difficulty in recognizing autism's "first symptom" was acknowledged by the Court of Federal Claims in *Setnes v. United States,* 57 Fed. Cl. 175 (Fed. Cl. 2003): "As distinguished from other medical conditions . . . the beginning stage of autism cannot be reduced to a single, identifiable symptom. Many of the initial 'symptoms' are subtle and can easily be confused with typical child behavior." *Id.* at 179. All of the medical witnesses agreed that delayed speech alone is not generally viewed or recognized by the medical profession as indicative of autism. Expert witness Dr. Mumper testified that autism diagnosis requires more than speech delay:

> Q. Okay. Does [expressive speech delay] match the particular diagnosis for autism?
>
> A. Well, that one criteria's consistent with the diagnosis of autism. But in order to have autism, you can't just have that one symptom. You have to have impairment in social reciprocity as well as repetitive and stereotype behaviors . . . .
>
> Q. Would a particular physician or psychiatrist or pediatrician know from an expressive speech

delay symptom that this particular child had autism?

A. No, I don't think so. And I think this is a crucial issue because speech delay has about a dozen things that can be caused. And I mentioned that it's a very common complaint that we deal with.

Dr. Mumper Test. at 16-17 (June 2, 2009).

It is undisputed that speech delay alone is not objectively recognizable by the medical community as a first symptom of autism. The Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (2000) requires, before a diagnosis of autism can be made, clinical criteria across three domains of social development, i.e. (1) qualitative impairment in social interaction, (2) qualitative impairment in communication, and (3) restricted repetitive and stereotyped patterns of behavior, interests, and activities.

Petitioners argue that since delayed speech is common, it can only be a "first symptom" of autism when accompanied by some other behavior that would lead medical professionals to consider autism as a possible diagnosis. Petitioners argue that this accompanying abnormal behavior occurred in September 1999 when Kit's Individualized Education Program evaluation showed signs of social impairment, including a lack of interest in toys.

Hindsight is not properly invoked to retrospectively make "objectively recognizable" what the medical community did not recognize and could not recognize, other than retrospectively. Such hindsight analysis does not retrospectively start the period of limitations. Only after Kit's autism was diagnosed–after several years of progression–could the medical profession retrospectively classify his early speech delay as a symptom of autism. However, at the time that the court starts the limitations

period for Kit Carson, the medical evidence was undisputed that Kit's autism was not objectively recognizable by medical professionals.

The panel majority relies on *Wilkerson v. Sec'y of Health & Human Servs.,* 593 F.3d 1343 (Fed. Cir. 2010) for the proposition that retrospective diagnosis can retrospectively start the limitations period. However, in that case the medical experts agreed that the Attention Deficit Hyperactivity Disorder symptoms were objectively recognizable. In contrast, here the medical experts agreed that delayed speech is often normal and is not objectively recognizable as a sign of possible vaccine injury unless accompanied by other abnormal behavior. There was no testimony, by any of the medical experts, that Kit's speech delay alone was objectively recognizable as indicative of autism.

The question is whether medical specialists could have recognized that Kit was manifesting autism at the time when the panel majority starts the period of limitations. Dr. Mumper agreed that speech delay "can be a symptom of autism" but she did not "concede," as the panel majority states, that Kit's autism could have been objectively recognized upon his manifestation of speech delay. As discussed *ante,* Dr. Mumper, like all the expert witnesses, testified that speech delay can be normal development, and that autism requires additional impairment.

The panel majority bases its determination of autism on the "first symptom" that the medical community rejected, and, having made this retrospective judicial diagnosis, concludes that it was known from the start that Kit was afflicted with autism. The Special Master did not so hold. Rather, with hindsight knowledge that Kit was eventually found to be afflicted with autism, the Special Master recognized that Kit's speech delay could have been a symptom of this autism. However, but for the eventual

diagnosis based on additional manifestations, neither the medical experts nor this court could determine a "first symptom" of autism for purposes of the Vaccine Act's statute of limitations. Unless accompanied by other behaviors, speech delay is not objectively recognizable as a vaccine injury.[2]

The panel majority incorrectly states that "the medical community would recognize speech delay as a symptom of autism." Maj. Op. at 7 n.3. However, Kit was studied by a barrage of medical specialists, none of whom found that Kit's delayed speech was indicative of autism, and who did not modify that diagnosis until other manifestations of autism appeared.[3] The court's holding that delayed speech, without more, starts the statute of limitations, would be tenable only if delayed speech, without more, were a compensable vaccine injury. This is not the government's position.

---

[2]   For instance the "Einstein Syndrome" refers to speech delay in children having high intelligence and precocious analytical skills. *See* Thomas Sowell, *The Einstein Syndrome: Bright Children Who Talk Late* (Basic Books, 2001).

[3]   In an addendum to her Medical Expert Opinion, filed February 17, 2009, Dr. Mumper responded to the question "What is the first symptom, in retrospect, that would have suggested the diagnosis of autism?" and answered, "With the advantage of retrospective analysis of the records, some observations from IEP assessments conducted by Buncombe County School district in September and October 1999 may have indicated the first symptoms of autism." Dr. Mumper also stated that "Even with a retrospective review of the medical records, it is documented that the doctor suspected nothing but speech delay as of May 2000."

At a minimum, equitable tolling should be applied to this petition. Equitable tolling permits the petitioner to present the claim; it does not decide the merits of the claim.[4] The Court in *Sebelius v. Cloer*, 133 S. Ct. 1886, 1892 (2013) recognized that the limitations period of the Vaccine Act is subject to equitable tolling. From the ruling that Kit Carson's claim started to accrue from a date at which no vaccine-based injury was objectively recognizable and no Vaccine Act claim could have been filed, and the court's refusal to toll the limitations period on its view of that period, I respectfully dissent.

---

[4] We recognize that controversy exists as to the relation between vaccines and autism. *See Cedillo v. Sec'y of Health & Human Servs.*, 617 F.3d 1328 (Fed. Cir. 2010).