Opinion for the court filed by Circuit Judge WALLACH.
Dissenting opinion filed by Circuit Judge NEWMAN.
WALLACH, Circuit Judge.
Parents Amy and Stacy Carson (“Petitioners”) filed a petition for compensation on behalf of their son, Kit Carson, under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-l to -34 (2006) (“Vaccine Act”). The Chief Special Master dismissed the petition as untimely filed. The United States Court of Federal Claims affirmed and dismissed the Petitioners’ petition for review. See Carson v. Sec’y of Health & Human Servs., 97 Fed. Cl. 620, 621 (2010). We affirm.
BACKGROUND
Kit Carson was born on May 22, 1996, and received numerous vaccinations be *1367 tween his birth and June 4, 1997.[1] Kit’s pediatricians noted that he was “ ‘[b]ehind in speech’ ” at his 18-month check-up, and “ ‘speech delay[ed]’ ” at his 24-month check-up. Carson, 97 Fed.Cl. at 621 (quoting Carson v. Sec’y of Health & Human Servs., 97 Fed.Cl. 620, 621 (Fed.Cl. Spec.Mstr.2009) (“Special Master’s Decision”)). On May 25, 1999, at Kit’s three-year check-up, Dr. Page, Kit’s pediatrician, noted Kit’s “severe language delay,” and referred him to the Developmental Evaluation Center in Asheville, North Carolina. Special Master’s Decision at *5. On September 13, 1999, Kit was evaluated by a psychologist for placement in his school district, at which time the psychologist again noted Kit’s language delays (“IEP evaluations”). Kit was diagnosed with autism spectrum disorder on April 26, 2001. Petitioners, on behalf of their son, filed a petition for compensation under the Vaccine Act on July 22, 2002.
After a deferral of proceedings, Respondent moved to dismiss the petition under Rule 21(b) of the Vaccine Rules of the United States Court of Federal Claims on the ground that Petitioners filed their petition more than 36 months “after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.” See 42 U.S.C. § 300aa-16(a)(2). The Chief Special Master relied upon the written reports and oral testimony of Petitioners’ medical expert, Dr. Mumper, to determine “the first event objectively recognizable as a sign of a vaccine injury.” Special Master’s Decision at *7. Relevant to the Chief Special Master’s decision was Dr. Mumper’s testimony that: (i) Kit Carson was “exhibiting speech delay” in May of 1999; (ii) speech delay is one symptom of autism; and (iii) difficulty with speech was “one of the ways [Kit Carson’s autism] manifested itself.” Id. at *15. Based on this testimony, the Chief Special Master concluded “that the first symptoms of Kit’s autism spectrum disorder are recorded in May of 1999.... Thus, the petition in this matter needed to be filed in May of 2002 to be timely filed in accordance with § 16(a)(2).” Id. at *16-17.
Petitioners appealed the Chief Special Master’s decision to the Court of Federal Claims. The Court of Federal Claims found that the Chief Special Master properly dismissed the petition as untimely and sustained the decision. Carson, 97 Fed.Cl. at 625. Petitioners then filed the present appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) and 42 U.S.C. § 300aa-12(f).
DISCUSSION
The Vaccine Act established a program to increase the safety and availability of vaccines, and through the Vaccine Injury Compensation Program claimants may get compensation for vaccine-related injuries or death. See 42 U.S.C. §§ 300aa-l, 300aa-10(a). The program limits the period during which a petitioner may file for compensation:
[ (a) ] (2) ... if a vaccine-related injury occurred as a result of the administration of [a vaccine set forth in the Vaccine Injury Table that was administered after October 1, 1988], no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of oc *1368 currence of the first symptom or manifestation of onset or of the significant aggravation of such injury....
42 U.S.C. § 300aa-16(a)(2) (emphasis added).[2]
“We review an appeal from the Court of Federal Claims in a Vaccine Act case de novo, applying the same standard of review as the Court of Federal Claims applied to its review of the special master’s decision.” Broekelschen v. Sec’y of Health & Human Servs., 618 F.3d 1339, 1345 (Fed.Cir.2010). We give no deference to the Court of Federal Claims’s or Special Master’s determinations of law, but uphold the Special Master’s findings of fact unless they are arbitrary or capricious. Id.
In Markovich, this court established a standard to determine when the “first symptom” occurred for purposes of the Vaccine Program’s statute of limitations. See Markovich v. Sec’y of Health & Human Servs., 477 F.3d 1353, 1360 (Fed.Cir.2007). The court rejected a subjective standard that focused on the parent’s view as to when the first symptom presented and instead adopted “an objective standard that focuses on the recognized standards of the medical profession at large....” Id. at 1360. The court held that “‘the first symptom or manifestation of onset,’ for the purposes of § 300aa-16(a)(2) is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large.” Id.
Petitioners do not dispute that Kit demonstrated speech delay more than 36 months before they filed their petition. Additionally, Petitioners’ expert medical witness concurred that Kit’s speech delay was the first symptom of his autism. At trial, Respondent’s counsel questioned Dr. Mumper on the relationship between Kit’s speech delay and his ultimate autism diagnosis:
Q: Would you ... agree with me ... that prior to July of 1999, Kit Carson was exhibiting speech delay?
A: He was exhibiting speech delay, that’s correct.
Q: Okay. And I believe I heard you say that you would agree that the speech delay can be a symptom of autism; is that correct?
A: It can be one symptom of autism, that’s true.
Q: And would you agree that this child, Kit Carson, one of the ways his autism manifested itself is in his difficulties with speech?
A: Correct.
Special Master’s Decision at *15-16. The Chief Special Master observed that “Dr. Mumper essentially conceded that Kit’s language delay, which was noted in May of 1999 by his treating pediatrician, was more likely than not the first symptom or manifestation of his autism spectrum disorder.” Id. at *15.
On appeal, Petitioners argue the medical community at large would not recognize Kit Carson’s speech delay as evidence of a vaccine injury. Pet’s Br. 11. Petitioners *1369 posit that “[sjpeech delay is too vague and common of an occurrence to be considered the first objectively recognizable symptom of the vaccine injury.” Id. at 18. According to Petitioners, “[t]he first objectively recognizable symptoms of social impairments and lack of interest in toys were observed during the IEP evaluations in September 1999; the petition was filed in July 2002, well within the 36 month statute of limitations.” Id. at 19.
However, the Chief Special Master made a factual finding to the contrary, stating: “[T]he first objectively recognizable symptom or manifestation of onset of Kit’s autism was exhibited no later than May 25, 1999 when Kit was noted by his pediatrician Dr. Page to have ‘severe language delay[1]....”[3] Special Master’s Decision at *19-20. This finding was “based on the medical records and Dr. Mumper’s testimony,” id. at *19, and was not arbitrary and capricious.
Petitioners effectively argue that speech delay cannot be a “first symptom” because it is an insufficient basis for a diagnosis of autism. See, e.g. Pet’s Br. 17 (arguing speech delay “is too broad and common of a complaint for a physician to know that this particular child had autism”) (emphasis added). However, as explained at length by this court in the past, it is the first symptom or manifestation of an alleged vaccine injury, not first date when diagnosis would be possible, that triggers the statute of limitations under § 300aa-16(a)(2). In Markovich, this court concluded that “[bjecause Congress is presumed to have intended disjunctive meaning by using the disjunctive word ‘or,’ we interpret the words ‘first symptom’ and ‘manifestation of onset’ as referring to two different forms of evidence of injury.” Markovich, 477 F.3d at 1357. This court explained that “[a] symptom may be indicative of a variety of conditions or ailments, and it may be difficult for lay persons to appreciate the medical significance of a symptom with regard to a particular injury,” whereas “a manifestation of onset is more self-evident of an injury and may include significant symptoms that clearly evidence an injury.” Id. We additionally noted that the first symptom or manifestation of onset might include subtle symptoms that a petitioner would recognize “only with the benefit of hindsight, after a doctor makes a definitive diagnosis of injury.” Id. at 1358 (internal quotation marks and citation omitted).[4]
*1370 Petitioners argue that “[t]he issue in the case at bar is not the Petitioners’ appreciation of the significance but that multiple medical providers did not appreciate the significance.” Pet. Br. 17. There is no question that speech delay can be indicative of several conditions, and in some circumstances may even be normal. In the instant case, however, it was not arbitrary and capricious for the Chief Special Master to find that the severe speech delay observed on May 25,1999, was the first objectively recognizable symptom of autism, the alleged vaccine injury. That Kit’s doctors did not diagnose Kit with autism until some time later does not alter the fact that this symptom was evident by May 1999.[5]
Conclusion
The Chief Special Master’s dismissal of this claim and the Court of Federal Claims’s affirmance were in accord with law, were neither arbitrary nor capricious, nor was there any abuse of discretion. The Court of Federal Claims’s decision is therefore
AFFIRMED

. This background is drawn from the Court of Federal Claims's opinion. A more detailed description of the Petitioners' history can be found in the Court of Federal Claims's opinion and in the Special Master’s Decision. See Carson, 97 Fed.Cl. at 620; Carson v. Sec’y of Health & Human Servs. No. 02-873V, 2009 U.S. Claims LEXIS 449 (Fed.Cl.Spec.Mstr. Aug. 26, 2009) (“Special Master's Decision”).

. The dissent states that "[a]t a minimum, equitable tolling should be applied to this petition." Dissenting Op. at 1370. Although this court held that equitable tolling is available under the Vaccine Act in certain circumstances, Cloer v. Sec’y of Health & Human Servs., 654 F.3d 1322, 1344-45 (Fed.Cir.2011) (en banc), "we find no basis in equity for doing so” in this case, see id. at 1344 (holding the same). The court in Cloer held that the unfairness of barring a claimant from asserting a diligently pursued Vaccine Act claim was not, by itself, "the sort of circumstance that might merit equitable tolling.” Id. Rather, " 'some extraordinary circumstance’" must also be present. Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)). Petitioners have not argued that any such circumstance exists in this case.

. The dissent appears to disagree with the Chief Special Master’s finding, stating instead that the medical community would not recognize language delay alone as indicative of autism. See Dissenting Op. at 1372-73. It relies on Dr. Mumper’s testimony and the Diagnostic and Statistical Manual of Mental Disorders, both of which show that a diagnosis of autism requires more than a speech delay. The date of possible diagnosis, however, is not the controlling inquiry. Rather, as stated above, the pertinent question is whether the medical community would recognize speech delay as a symptom of autism. The Chief Special Master found that it would. See Special Master’s Decision at *19-20.

. To the extent the Court of Federal Claims affirmed on the basis that a "first symptom” need only be recognizable by the medical community "with the benefit of hindsight,” Carson, 97 Fed.Cl. at 625, this court declines to decide whether hindsight is adequate, or instead whether the “first symptom” must be recognizable by the medical community as indicative of the alleged vaccine injury at the time the symptom occurs. See Markovich, 477 F.3d at 1360 (stating the "first symptom” must be "recognizable” by the medical profession at large). It is, however, clear that there is no need for the symptom to be contemporaneously recognized by the medical community. See Wilkerson v. Sec’y of Health & Human Servs., 593 F.3d 1343, 1345-46 (Fed.Cir.2010) (rejecting Petitioner’s argument that the statute of limitations was not triggered by a "first symptom” unless the *1370 medical community in fact recognized it as such at the time it occurred).

. In Markovich, the first symptom of petitioner’s seizure disorder was a first episode of repeated eye blinking; this court stated that "the testimony of Dr. Corbier and others confirms that Ashlyn’s eye blinking episode on July 10, 2000 was objectively recognizable by the medical profession at large as constituting the first evidence of vaccine injury onset.” Markovich, 477 F.3d at 1360. This court later clarified, ”[w]e do not read Markovich as requiring in each case a showing of the date on which the medical profession at large had such a recognition [of the symptom],” explaining that ”[t]he fact that such recognition may have occurred some time after the symptoms first occurred does not undermine the medical judgment upon which the decision in this case was based.” Wilkerson, 593 F.3d at 1345-46.

. Fifteen percent of children between the ages of 24-29 months experience language delay. Buschmann, Jooss, et al, Children with Developmental Language Delay at 24 Months of Age, 50 Journal of Developmental Medicine & Child Neurology, 223 (2008).